Court of Appeals for the Ninth Circuit is now in session. Please be seated. Judge Rawlinson, can you hear us? Yes, can you hear me? We can. Perfect. Good morning, everyone, and welcome to the Ninth Circuit. We have three cases on our calendar, I think, for argument this morning. Is there four? I think it's three. It's three cases on our calendar for argument this morning, and we have several cases that were submitted under briefs. The ones that submitted under briefs are United States v. Villareal, United States v. Figueroa Juarez, and Jones v. County of San Diego. We'll hear the other cases for argument in the order that they're on the calendar. The first case is United States of America v. Richardson. And, Mr. Burstein, you're up first. Thank you very much, Your Honor. Happy Friday. May it please the Court, Devin Burstein on behalf of Manvel Richardson. Your Honors, I think really the best place to start is actually, Judge Clifton, with your concurrence in Bradley v. Henry on the issue of the right to counsel of choice in a somewhat analogous circumstance there. And I think that's the best place to start because your concurrence, Your Honor, And so I'll quote. First, although an indigent defendant is not entitled to have the attorney of his choice appointed, the Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom the defendant can afford to hire or who is willing to represent the defendant even though he is without funds. Was there such an attorney in this case? Well, the Court placed a priori. No, I understand your problem. I'm asking a different question. Was there such an attorney in this case? We'll never know the answer to that, Your Honor. Well, isn't the answer no? No one ever, your client, no attorney has been identified who was willing to take on this case. We can deal with what the judge said in a second. I'm just asking a factual question. That's a factual question is correct. And that brings me to the second point which Judge Clifton summarized in that concurrence, which is, quote, given the Sixth Amendment right at issue, quote, a defendant should be afforded a fair opportunity to secure counsel of his own choice. And that comes direct. But he did. He had an opportunity before. We'll get back to that dialogue, but we're on a unique set of facts here. And he could have had and did, in fact, have the opportunity to come up with an attorney before. Instead, he had a federal defender appointed. For whatever reason, they had a parting of the ways. But up to that time, there was no limitation at all on him, just like all other defendants, coming up with his own counsel. And when we get to the day in question with the back and forth with the Court, he starts off by asking if the government has any pro bono attorneys, if the Court has any pro bono attorneys, which is obviously a question that doesn't fit the context very well. And the judge tries to explain, well, we provide counsel. You don't have to pay for them. So why isn't his opportunity up to that moment sufficient to give him the right to find his own lawyer, either that he'd pay or that would be willing to represent him for free? That's analogous, Your Honor, to every single right to counsel case. Up until the time they asked to change counsel, they've had the right to do whatever they wanted to. All those cases involved places where the Court said, no, you can't. You've identified this counsel, and we're not going to let you make the substitution. We don't have that here. This case truly is a unique set of facts, as best I can tell. Right, because no judge has ever said, as far as I've ever heard or can find in any case, you don't have the right to look. Well, she didn't say that, and that's my difficulty in this case. And I'm not defending what she said. I think it was a misleading statement at best. But it occurred this way. Your client was unhappy with his federal public defender. I'm not sure he was entitled to change counsel, but the judge said, look, I think the best thing to do is just to dismiss the federal public defender and get you a CJA lawyer. And then he said, do you have any pro bono lawyers? And she said, no, we have the CJA panel. He said, do you mind if I look for a pro bono lawyer? Would you have a problem? And she said, I would have a problem. She didn't say he couldn't. She didn't forbid him from doing so. And her statement was made, I think, in the context of he was clearly saying, don't appoint a CJA attorney, give me time to go look for someone. Well, she's just dismissed the federal public defender. That's not accurate. No, she said, I will dismiss the federal public defender. Once you have new counsel confirmed. Once you have new counsel confirmed. Right. But you now have a counsel you can't communicate with. So I'm not sure I just don't read this as, look, I'm not going to hold up on this while you look for new counsel. And it's not the world's greatest statement. I can't defend it. But what I don't see in this case is a judge saying, you have no right to look for your own lawyer. Your Honor, if it's okay with you, do you care if I look up any pro bono attorneys? I do care. I do care. Because these are panel lawyers. They've been vetted. They're all very, very good, experienced lawyers in federal court. And I don't want someone you just pull out of thin air with all due respect. I understand. But this follows after she said, look, at your request, I'm going to dismiss what appears to be a very capable and good assistant public defender. Right. And I will give you a CJA lawyer. And he says, well, you have any pro bono lawyers on the list? And she says, no, they work for free. And he says, do you mind if I look for one? And I think what she's saying is I do mind right now if you look for one. I want to move this case along. But then he continues. And he says, I'll do my history and everything on them, of course. In other words, I'll vet them. And she says, Mr. Richardson, that's my decision. We're dealing, Your Honor, let's just step back into the real world of who this is. We're dealing with a pro se defendant talking to a federal judge who's going to oversee his trial and in all statistical likelihood sentence him. What else is he supposed to say? If your Honor said to me, you know what, Mr. Burstein, I'm going to bestow upon you the right to eat at any restaurant you want as long as you can pay for it or you can find it for free. And I say, Your Honor, okay, I'm going to call around to some restaurants. And you say, no, you're not. I do mind if you call around to some restaurants. I'm then expected to call around to a bunch of restaurants and go looking for one? Well, lots of defendants do. I mean, we have defendants come in after they've had counsel appointed and decide here's a different counsel. But not after they've been ordered by a federal judge or told by a federal judge. Is that something he could have discussed with his new counsel? I mean, the problem is he plainly didn't understand the process. That's how he got off track to begin with. And I agree with Judge Hurwitz's observations. The district judge's responses weren't what they should have been. The problem is it's hard to see how this case gets back on track any other way. Can I answer that? And also, what's the realistic possibility? I mean, theoretically, yes, he's going to find someone to represent him pro bono. And maybe if you're Martin Luther King in the Birmingham jail, you'll find people willing to do that. A defendant of this nature is not somebody people are lining up to represent for free. That's why the CJA system exists to pay people because good lawyers aren't willing to do it for free. So what are we supposed to do with this? I think that the answer comes from the Supreme Court. It says, as Your Honor wrote, a defendant should be afforded a fair opportunity to secure counsel of his own choice. That's the Supreme Court precedent. Well, he had the opportunity. You can say the opportunity should have continued longer. But he certainly had the opportunity up to the point in time we had this discussion. And he did nothing about it. I understand Your Honor's point on that. I don't think it's fair in context. He did what he should have done. He's a pro se defendant. He asked the court for permission to look for a pro bono counsel. But he asked the court for permission to look for a pro bono counsel instead of having a CJA counsel appointed for him once the judge checked the list. And that's different than saying, may I, am I forbid, your restaurant analogy sort of interested me because I wouldn't regard that as saying I couldn't find a different restaurant the next night. But I'm not criticizing analogies. Our difficulty with this case is it's not clean on this issue. It's not as clean as you represent it to be. It may well be that Mr. Richardson understood. I don't know what he understood since we have nothing from him in this record. But he may have, it would not have been unreasonable for him to understand that the judge said don't do this. But I'm not sure that I can view the judge's statement in this context as a categorical denial. That's my problem. You wanted to save some time for rebuttal. I don't want to use it up. I do, but let's, I mean, here we are. So, I mean, what if we just turn that question around and we just turn that statement around and we say to ourselves, if we're putting ourselves in the position of a pro se defendant and we're in that position looking up at that federal judge and that federal judge says I do mind, that's my decision, sir. We then, the court is then going to expect or rule that he has an additional as a pro se defendant obligation to say no, no, no, excuse me, Your Honor. I really want, I mean, what then is he supposed to do? If he's supposed to ask his newly appointed lawyer, are you the only person I can talk to or can I go find somebody else? I mean, these are placing burdens on pro se defendants that, frankly, Your Honor, are unrealistic. But the case law requires him to show up with a counsel of choice that he can pay for and we're taking you over time and I'm confident Judge Hurwitz will still give you some shot at rebuttal. I will. But it's a hard question and a unique set of facts. And so the case law says he's allowed to show up with counsel that he can pay or someone who's prepared to do it pro bono. The problem is he hasn't shown up with those people. He's asking for the chance to try to do it, a chance which I have to think is pretty unlikely. I mean, that's why we have CJA counsel. Two points on that. One is you're talking about some of the case law, but Your Honor is excluding a significant part of the case law, which appears in your concurrence. I love reading Judge Clifton's stuff and I've read his concurrence and I've read other stuff, but he's accurate in saying this set of facts is not in any of the case law. So you really can't tell us that there's a case on point. You are quoting to us language in cases involving different decisions, which is quite favorable to your position, but you can't tell us the case law compels this. Right. Well, that's what we do in the common law. I don't know how to read this a different way. I wish we were common law judges, but we're not. Well, we of course we, I mean, yeah, I mean, we are still. And a defendant should, what does this mean when the Supreme Court says, maybe this is what the court needs to struggle with. What does the Supreme Court mean when it says, quote, a defendant should be afforded a fair opportunity to secure counsel of his own choice? In my estimation, my client was trying to exercise that right. Maybe the court disagrees. Maybe it doesn't. But I really think that at least frames the issue. We've taken you over, but as Judge Clifton indicated, I will give you a minute for rebuttal. Thank you, Your Honor. Let's hear from the government. You probably don't have any precedent that really applies for us either, do you? Not precedent, but persuasive. May it please the court, Rachel Agress for the United States. Good morning, Your Honors. So I take it this is the issue the court is focused on, and so I'm going to stick with addressing the first issue, unless the court asks me about the second issue in the brief. With respect to the first issue, the court is correctly reading the entirety of the transcripted issue and the exchange of the issue. Well, we're correctly reading it, but I'm still troubled by it. It just strikes me as a misstatement by the judge. She shouldn't have a problem if he wants to go look for his own lawyer. What she should have said was, look, I'll appoint CJA counsel. You can go look for your own lawyer to your heart's content. If you find one, come on in, and we'll decide whether or not that person will be allowed to represent you because at that point we may be so far down the road that the trial is pending. But instead, her statement would have been understood, I think, by the, I don't know who the average criminal defendant is, but by a criminal defendant, to say, no, you can't do that. If we understand it that way or if it's reasonably understood that way, what should we be doing? Your Honors, I would just point out one other piece of the transcript that the court hasn't focused on, and then I'll address the court's question about what if we read it the other way. But on page 74 and 75, the court originally says, that would be my conclusion right now. She uses the words right now. And then there's a dialogue with the defendant about finding pro bono counsel, and then she concludes, I'm going to appoint CJA counsel. That is my decision. But she did say right now during the proceeding. And so I think taken as a whole, a reasonable person, and the government's position is that a reasonable person, a reasonable defendant in this situation, would see the court's decision for what it in actuality was, which was I am appointing CJA counsel right now and not a blanket denial forevermore about his opportunities to search for pro bono counsel. Well, I suspect that's her intent. And, I mean, we've been doing this a long time. We're speaking here of a very capable and very experienced district judge responding to what she was hearing at the moment. And what she was hearing at the moment, I suspect, was she's saying we've got very capable attorneys. You don't have to pay for them. So it seems to satisfy his request for a pro bono attorney. And she tries to explain that, oh, they get paid for by the government. And then he goes on to say, well, would you mind if I looked for a pro bono? And she says, yeah, I do care. And I think she's responding to the notion that this case is going to get off track. Of course, it didn't go to trial for quite some time, but get off track if I simply sit here and don't appoint anybody. So I'm going to appoint somebody. Our problem is that the focus, I think, needs to be on what the defendant understood or heard or reasonably thought he heard from the judge. And I get the point that it seems to say, no, this is my decision. I'm going to appoint you an attorney. End of story. Don't come back and bother me again. Now, I'm not sure how solid that last piece is or whether it's a reasonable understanding. And I hear what you're saying in terms of the court focusing on that moment in time. But if, in fact, the defendant does reasonably come away with the impression that this is it, he can't seek somebody else, does he have a claim? The government's position is that the Sixth Amendment right is not triggered, as your honors have noted, until there is ready, willing, and able counsel who he has successfully retained. Well, so let me change the facts for you a little bit. And whenever I do this, somebody tells me those are not the facts of this case. So you don't have to do that. These aren't the facts of that case. You don't have to do that. Let's assume that he shows up for the first day for arraignment, and the judge says, do you have a lawyer, initial appearance, and the magistrate judge says, do you have a lawyer, and can you afford one? And he says, I don't have a lawyer and I can't afford one. And then he says, but can I go retain one or see if somebody will do it for free? And the magistrate judge says, no, you must accept the lawyer that we appoint. That would be, even though he didn't have a lawyer at hand, you'd agree under those circumstances, that would be a violation of the Sixth Amendment rights. The government's position is that if he had had a lawyer at hand, that would be a violation. No, I understand. I'm testing that position for you. The government's position would be at that point, the standard of review would not be structural error, but would fall under the arena of the court managing its calendar. The court is basically saying, I'm not going to allow a delay. In effect, I'm not going to allow a delay. I'm going to appoint somebody right now, which is what happened here. Well, but I'm, again, changing it. The judge doesn't make an ambiguous statement or what it might be interpreted as. It would change the facts. If the magistrate judge or the district judge here said, I'm going to appoint counsel. I don't want you to be underrepresented. But if you come back with somebody, we'll take it up then. But that's not what's said. So go back to the scenario posed by Judge Hurwitz. What do we do? The district judge said in this case, no, you're not entitled to seek pro bono counsel. You must accept the counsel that I appoint to you. This case, that's the statement she makes this time without any qualifiers or anything else. Correct. Is it the government's position that there's no Sixth Amendment violation because he's not standing there with the new substitute counsel? Yes. It's the government's position that until the individual comes with willing counsel. He has to engage in a fruitless act in front of a judge who's already made her position perfectly clear before he can preserve the issue for appeal. Well, Your Honor. I don't know why you think you need to go there. We don't need to go there. Because there was ambiguity here. But you did go there. You did go there. You don't want to concede anything. Yes. The government's position is that there are two buckets of individuals. There's individuals who can't afford counsel and don't have counsel. And for those individuals, the court appoints counsel, and they do not have a right to choose counsel. And then there's individuals who have, in fact, retained counsel, and they have a right to that counsel as well. Now I want to, again, make sure I understand your position. If you have appointed counsel and then thereafter are able to retain counsel, and I mean retain, not necessarily in pay. You just find private counsel who's willing to substitute. Don't you have a right to substitute that counsel in the absence of screwing up the trial schedule? Yes, Your Honor. The government agrees with that. Okay. Yes. So it's not really people who can pay and people who can't pay. It's everyone has a right to retain private counsel to represent them. Correct, Your Honor. And the court originally asked, is there anything on point in the case law? And I would point to Gilmore as actually the most, even though it's an unpublished decision, as the most analogous on the facts. Because in that case, the defendant had counsel, appointed counsel, and showed up with a second individual, and the court basically said, no, you have appointed counsel, and this is the person, and the court will not pay for a second counsel. And the defendant never came back and said affirmatively, this second attorney is willing to represent me pro bono. They just didn't get to that second part of the question. But the court gave a statement similar to what occurs here. My problem with, besides the fact that it's an unpublished disposition, is that in that case the natural response to the court will not pay for second counsel by either counsel or the defendant would have been, oh, no, Your Honor, you misunderstand. He's willing to represent me for free. And having not made that response, I think the court was perfectly entitled to understand that the defendant wanted her to pay for second counsel. Here he uses the word pro bono and makes it clear he's not looking for the court to pay. So I'm not sure how that case helps us. Well, in that case, the actual presentation of an individual who is ready, willing, and able. But not necessarily without the court paying. Yes. And I would say, listen, as Your Honors have noted, there's no case directly on point. But in certain instances, the court has allowed choice of counsel to be burdened. For example, in Kaplan, the court said it's not an imposition on your ability to choose your free counsel, the fact that we're denying you the ability to use funds that have been forfeited or frozen. And so the court does recognize that there are some limitations that may occur in the course of the court proceeding that may prohibit an individual from getting pro bono counsel. And so I would say, for example, a judge denying a continuance, it does impede to an extent an individual's right to find pro bono counsel. But that is not a structural error. Let me ask a question, and I want to ask your friend the same question that neither of you really address in the briefing in this case. Counsel is appointed. No complaint thereafter about counsel who's appointed. I understand this is a structural argument, so there's no reason to show prejudice. But what do we do with the fact that he's represented by competent counsel thereafter with whom he can talk about whether or not he can bring in his own counsel? Does that have any effect on this case? There are no claims that counsel was incompetent in effect. No, no, I understand. And there's no record that they talked about it. And there's a record of two hearings with the court. Stop, so let me ask the question so you don't answer the wrong one. I'm just still trying to figure out if there's any relevance to our analysis that he was represented thereafter by competent counsel with whom he could have consulted about his right to obtain pro bono counsel thereafter. The government does believe that's relevant because, again, the government's position is that he didn't, at the point that the court addressed the issue, taken in context, she said, right now, this is what I'm going to do. And then he said, effectively, I want time to go look. And she said, I do care. I'm going to appoint somebody right now. And so to the extent he had competent counsel, he could have raised, you know, can I propose somebody else? Can I come back to the court? And he's made no sort of representation that he attempted to raise these issues or that his counsel was ineffective and couldn't advise. We've taken you over, and I thank you for your argument. We took the government a minute over, so let's put a minute back on for Mr. Richardson's counsel. Thank you. Thank you, Your Honor. I'll get to your question in one second. I am that second lawyer in Gilmore, believe it or not. And I am the person who argued that case in front of this court. And Your Honor is right. The problem was that the first lawyer in that case didn't make it clear to the court that I was coming in pro bono. So you're 100% right. That was the exact problem. I can say that with certainty. Okay. Here's my problem with this case is that we're confronted with not a perfect record. Right. And I wonder what the obligation of second counsel representing somebody who wants to make this claim on appeal is to make the record clear that he would have preferred to have the ability to go out and do something. Neither side briefed this, so I don't expect you to give me a learned answer. No, I think I have one because this is the way I think that works, because every right to counsel of choice case essentially has that scenario. Right? Every time there's a violation. No, but had you been Mr. Richardson's second lawyer, you would have said, Your Honor, I want to make a record on this issue. I would have learned my lesson. But seriously, Your Honor, every right to counsel of choice has that scenario. Right? The defendant wants somebody and the judge says no. And that's how it gets on appeal. Right? So there's always a second lawyer. And see, what I'm worried about in this case is the judge didn't. You say the judge said no. Perhaps she did. We'll have to figure that out. Right. But she said something a little bit different than no. And I would have thought, and we would have been much better off had we known whether she meant no or she just meant no, not now. And we don't have a record on that. Right. But the direct answer to your question is that can't matter. His ability to later talk to a lawyer, because then every right to counsel of choice case would come out differently. Then this is the real point of this whole case. Because we still are common law. What message are we going to send on these facts? My client has done his time. So we're really dealing with a pure legal question. What message is this court going to send about the right to counsel of choice when people request pro bono? Is the court going to say, we're troubled by this, but we're going to affirm? That, respectfully, I've read it a thousand times. I don't think that gets the ball over the line. Well, fortunately, we don't have the scenario here is peculiar. We don't get many cases where criminal defendants ask for pro bono counsel. We have cases where they appear with pro bono counsel. But why is that? It's not because they don't ask. It's because 98% of federal criminal cases are resolved by guilty pleas with waivers of appeal. That's why we don't have it. That's a separate problem. We still get lots of cases. And after the many years that the three of us collectively have spent on the bench, we haven't seen anything quite like this. And I think I can understand the scenario, and I think the focus needs to be on what the criminal defendant perceives. A hundred percent. But he comes in starting by asking for pro bono counsel. Now, he presumably knows the person he's been sitting next to or talking to is a deputy federal defender. Right. And the dissatisfaction I have to get into. So I suspect he doesn't understand what we know as the CJA system, because he starts by asking for pro bono. But we're all speculating there, too, because we've got no record about what his reaction to all of this was, except for the little dialogue. There's a phrase that I'd like Your Honor to take a look at in that, where he says, I know pro bono lawyers are for free, not under federal. And the judge cuts him off. And what he's saying is not under federal payment. That's what – look, I was a federal public defender. I know. We know. This is common sense stuff. I assume you're probably – are you a CJA counsel for this case? I am. So. He wouldn't have wanted you. Maybe, maybe not. But I probably would have done it pro bono because I love the Sixth Amendment. But the point is he wants a lawyer that's not paid for by the federal government. That's what freaks out defendants. When they know that the same money is paying my friend and myself, they often feel like we have torn interests. And that's what he's saying. I want somebody independent. Your Honor, she says no. She doesn't say it as clearly as she can, but that's what he would understand. Our difficulty – and we'll let you sit down after this – is that this record could be read as him saying, I want you to appoint somebody who's not being paid by the federal government. And that's – in the context of this statement – and that's why I wish there were a better record. But we'll deal with it. Thank you. We'll deal with the record we have. Thank you very much. You've both made very fine arguments. Have a wonderful weekend. He was lucky to have you appointed to represent him. A better record than with Gilmore. Even though you're being paid by the government. I thank both counsel for their arguments and for their patience in the courts, putting up with the court's questioning. And we will have – this case will be submitted and we'll move on to the next case on the calendar.
judges: RAWLINSON, CLIFTON, HURWITZ